**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **CORT THOMAS, as the Receiver for Carnegie Development, LLC, et al.,** | § | |
| **Plaintiff,** | § | |
| **v.** | § | **No. 3:24-cv-00612-X** |
| **HAOQIANG FU (A/K/A MICHAEL FU), PIC CONSULTANT, LLC, SILVERLAND FINANCE LIMITED, STEPHEN T. WALL, CARNEGIE HOMES, LLC, SASKYA BEDOYA ZUNIGA, TIMOTHY L. BARTON, VICTORIA L. BARTON, V STRATEGIES, LLC, MAXIMILIEN E. BARTON, MARTINE G. BARTON, SADA CUMBER, INDIVIDUALLY AND DBA PLUMBROOK GLOBAL CONSULTING COMPANY, MURUGAN VENKATACHALAM, INDIVIDUALLY AND DBA BROWARD ACCOUNTANTS** | § | |
| **Defendants.** | § | |

**RECEIVER'S RESPONSE TO BARTON RELATIVE DEFENDANTS' MOTION TO LIFT STAY AND REOPEN, OR ALTERNATIVELY, MOTION TO LIFT STAY AND SEVER ACTION**

Cort Thomas, in his capacity as the court-appointed Receiver and Plaintiff herein, files his Response to Barton Relative Defendants' Motion to Lift Stay and Reopen, Alternatively, Motion to Lift Stay and Sever Action [Dkt. 12] (the "Motion") and in support shows the Court the following:

## I. SUMMARY

The Receiver filed this lawsuit seeking the recovery of more than $7.3 MM based on evidence supporting the existence of fraudulent transfers made collectively to the defendants. Contrary to their assertions, the Receiver filed suit against Victoria, Maximillien, and Martine

Barton (the "Barton Relatives") not because they are related to Timothy Barton, but because evidence demonstrated their receipt of fraudulent transfers. Rather than filing based on a whim or mere preference, the lawsuit needed to be filed, when it was filed, to preserve the claims before any statute of limitations potentially expired. Nonetheless, immediately after filing the lawsuit, the Receiver asked this Court to enter a stay so as to conserve judicial and Receivership Estate assets until the Fifth Circuit resolved Timothy Barton's appeal of the Receivership Order.

The Receiver continues to believe a stay of this lawsuit as to all defendants (as well as a companion ancillary case) is the best course because until Mr. Barton's appeal is fully resolved, litigating the case will unnecessarily drain receivership assets. However, due to the length of time Barton's appeal of the Receivership Order has been pending, if the Court is inclined to lift the stay, the Receiver requests that the Court sever Victoria, Maximillien, and Martine into a separate lawsuit and lift the stay for the sole purpose of permitting the Barton Relatives to file a motion to dismiss.

## II.
## FACTUAL BACKGROUND

1. As described in the operative Complaint [Dkt. 9] (the "Complaint"), on October 18, 2022 in the *SEC v. Barton*, *et al.*, Cause No. 3:22-CV-02188-X, pending in the United States District Court for the Northern District of Texas, (the "Underlying Lawsuit"), Cort Thomas was appointed as Receiver for various "Receivership Entities." On November 29, 2023, following an additional motion, briefing, and an evidentiary hearing, Mr. Thomas was reappointed as Receiver, pursuant to a new Receivership Order (the "Receivership Order"), for a substituted set of Receivership Entities.

2. Shortly after the Court entered the Receivership Order, Tim Barton filed an appeal of that order in Appeal No. 23-11237 (the "Appeal"). Because Barton had requested and received

accelerated consideration of an early appeal, the Receiver believed he would do the same with the Appeal. Barton, however, did not seek accelerated consideration of the Appeal, nor did the SEC.

3. Even while the Appeal is pending, the statute of limitation for claims the Receiver holds, including fraudulent transfers, is likely running. Accordingly, standing in the shoes of the Receivership Entities over whose assets he was directed to assume possession and control, on March 13, 2024,[1] the Receiver filed the instant lawsuit to recover fraudulent transfers made by these entities and thereby toll the statute of limitations.

4. Contemporaneously with filing the lawsuit, the Receiver also filed a Motion to Stay or Abate the lawsuit [Dkt. 3] to preserve judicial and Receivership Estate resources while Barton's Appeal is pending. On April 4, 2024, the Court granted the Receiver's motion to stay. [Dkt. 11] (the "Stay").

5. Barton's Appeal, by which he challenges the propriety of the Receiver's appointment as well as inclusion of most Receivership Entities within the scope of the Receivership Estate, is still pending. Although Barton's Appellant's brief was initially due on March 5, 2024, he received several extensions, and oral argument was not heard until February 3, 2025. The Fifth Circuit has yet to rule on the Appeal.

## III.
## ARGUMENT & AUTHORITIES

### A. The Receiver's Basis for Filing the Lawsuit

Despite the Barton Relative's assertions, the Receiver had a good faith basis for filing this lawsuit. Pursuant to the Receivership Order, the Receiver was charged with investigating "the manner in which the financial and business affairs of the Receivership Entities were conducted"

[1] An amended complaint was filed on April 2, 2024 [Dkt.9].

and with instituting "actions and legal proceedings, for the benefit and on behalf of the Receivership Estate" to recover wrongly spent funds. Receivership Order ¶ 45. As detailed in the Complaint, the Receiver traced funds to each of the Barton Relatives paid by multiple Receivership Entities, and concluded claims for the recovery of these transfers were valid, viable, and will likely succeed. While the Receiver will respond in more detail if and when the Barton Relatives file motions to dismiss,[2] he addresses at a high level the bases for his allegations against each defendant below.

**1. Victoria**

Victoria claims that all payments she received were for services provided to JMJ Development, LLC by her company V Strategies, LLC. Yet, as detailed in Exhibit G to the Complaint, all but two of the payments at issue were paid directly to Vicotria or to credit cards for her benefit, not V Strategies, LLC. Additionally, several of the payments came from Goldmark Hospitality, LLC, Broadview Holdings, or HR Sterling, LLC, not JMJ Development. Moreover, none of the payment amounts discovered to date correspond to the invoices Victoria provided in her declaration attached to the Motion. And as Victoria admits and the Receiver has discovered, numerous payments were made by Receivership Entities for the loan on Victoria's Porsche, titled in her name individually. Finally, but importantly, when the Receiver interviewed Victoria on the first day of the Receivership, she claimed she did not work for any of the Receivership Entities, was "completely separate" from any of the activities at issue in the SEC's lawsuit and merely utilized office space at JMJ's business location. While the Receiver's investigation has remained limited for a host of reasons outlined in his Quarterly Reports (including Barton's refusal to assist

[2] Generally speaking, while the Barton Relatives contend that the Receiver's claims were brought in "bad faith," their arguments ignore contrary facts, misapprehend the law, and rest on bare and incorrect conclusory assertions.

the Receiver's efforts to locate accounting records and communicate with the Receivership Entities' in-house accountant), to date the Receiver has not located (or been provided) any W-2 or 1099 showing V-Strategies was a contractor for the Receivership Entities. Nor has Tim Barton provided a list of all employees of the Receivership Entities, as explicitly mandated by the Receivership Order and requested by the Receiver numerous times. *See* Receivership Order ¶ 8.

**2. Maximilien**

As detailed in Exhibit H to the Complaint, Maximilien received sporadic payments of varying amounts from multiple Receivership Entities between 2019-2022. Only two of the twenty payments to Maximilien located to date came from the Receivership Entities' payroll arm, HR Sterling. Based on the payments the Receiver has found so far, Maximilien received over $62,000 from the Receivership Entities, with only $2,638.77 being paid by HR Sterling. Again, no W-2s or 1099s have been located or provided showing Maximilien was an employee or contractor for the Receivership Entities, and Tim Barton has refused to abide by the Receivership order and provide a list of all employees. Finally, even assuming Maximilien was employed by the Receivership Entities and the approximately $62,000 in payments constituted paychecks, however, Maximilien would still need to establish his affirmative defense that he received these payments in good faith. Maximilien's knowledge of the Receivership Entities' activities would likely vitiate any such good faith defense.

**3. Martine**

During his initial investigation, the Receiver obtained bank statements from Capital One Bank showing numerous payments totaling several hundred thousand dollars from JMJ Development, LLC to "ACH Withdrawal AMEX EPAYMENT ACH PMT 010317 MARTINE BARTON W1030" or a substantially similar reference. Including Martine in the lawsuit was not sloppy or haphazard but based on the plain language of bank statements implicating Martine. Upon

analyzing the implicated the American Express credit card statements, it appears this American Express card was likely for the benefit of Receivership Entity Goldmark Hospitality, LLC, and not Martine Barton. While, notably, hundreds of thousands of dollars in payments made for the benefit of Goldmark Hospitality and the Amerigold Suites constitute yet another example of funds held by one Receivership Entity (including Wall Investor monies) being used to fund another, the Receiver agrees that if Martine Barton did not receive the benefit of these funds, she should not be a defendant in this lawsuit.

Although the Receiver will consider voluntarily dismissing his claim against Martine, he will require a declaration that she did not receive the Transfers reflected in the bank records or the benefit of those Transfers, as alleged in the Complaint.

**B. The Receiver Opposes Lifting the Stay But Does Not Oppose Severing Victoria, Maximilien, and Martine's Claims**

Under Federal Rule of Civil Procedure 21, the Court has broad discretion to sever parties into separate cases. *Def. Distributed v. Bruck*, 30 F.4th 414, 427 (5th Cir. 2022); *In re Rolls Royce Corp.*, 775 F.3d 671, 680 (5th Cir. 2014).

The Receiver does not oppose severing Victoria, Maximilien, and Martine into a separate case and to allow briefing on a motion to dismiss while the Appeal continues.[3] Until the Appeal is resolved, however, he does oppose lifting the Stay in this lawsuit or allowing a severed case to progress beyond the motion to dismiss stage.[4] "District courts have broad equitable powers to preserve a receiver's ability to operate without interference." *SEC v. Stanford Int'l Bank, Ltd.*, 429 Fed. Appx. 379, 380 (5th Cir. 2011). That "broad authority" extends to issuing, or making

[3] The Receiver requests that the Court stay all other activity in the severed case.

[4] The authorities cited in the Motion address preliminary injunctions generally, rather than a stay and justification for it, in the context of a receivership.

exceptions to, "orders preventing interference with its administration of the receivership property, such as orders imposing blanket stays of litigation." *SEC v. Provident Royalties, L.L.C.*, 2011 WL 2678840, at *2 (citing *Schauss v. Metals Depository Corp.*, 757 F.2d 649, 654 (5th Cir. 1985)). Stays in receivership matters serve as additional tools furthering the goals of the receivership. *SEC v. Byers*, 609 F.3d 87, 92 (2d Cir. 2010). The Stay is intended to protect receivership assets and defrauded investors and serve "considerations of judicial economy." *SEC v. Vescor Cap. Corp.*, 599 F.3d 1189, 1197 (10th Cir. 2010). Three factors inform the court's broad discretion regarding whether to lift a litigation stay: "'(1) whether refusing to lift the stay genuinely preserves the status quo or whether the moving party will suffer substantial injury if not permitted to proceed; (2) the time in the course of the receivership at which the motion for relief from the stay is made; and (3) the merit of the moving party's underlying claim.'" *SEC v. Stanford Int'l Bank Ltd.*, 424 Fed. App'x 338, 341 (5th Cir. 2011) (quoting *SEC v. Wencke,* 742 F.2d 1230, 1231 (9th Cir.1984)).

First, continuing the Stay will preserve the status quo by not opening the flood gates and forcing the Receiver to litigate while the Appeal is pending, and while lacking resources to conduct a full forensic investigation into the Receivership Entities' accounting records. And as Barton is fond of asserting in opposing any activity by the Receiver, if the Appeal is successful, the Receiver may be discharged or limited to control over a smaller subset of Receivership Entities.

The time in the course of the receivership dictates continuing the Stay as well. As this Court ruled only a few months ago in the Underlying Lawsuit, the Receivership is still in its early stages, a status exacerbated by "the size of the Receivership estate, the complexity of the scheme, and the litigiousness of the defendant."[5] Further, the existing Stay (and any Stay of a severed

[5] Underlying Lawsuit Dkt. 584.

case) is not unlimited: it is tied to the pendency of the Appeal. *See* Dkt. 11 ("The Court STAYS this case pending disposition of Appeal No. 23-11237.")

Finally, neither the Barton Relatives nor any other defendant demonstrate "substantial injury" from the continuing Stay.[6] And if the Barton Relatives are severed out of this lawsuit to permit briefing on their proposed motion to dismiss, no purported injury other than the "inconvenience" of being properly named as defendants, for them or any other defendant exists.

On the other hand, resolution of the claims in this lawsuit, at least against one other defendant (Tim Barton), may also implicate attorney-client privilege issues. Addressing those issues will be fact-intensive work and time-consuming for the parties and the Court. Incurring fees to address the privilege issues and more generally litigate this case and any severed case will cause substantial injury to a receivership estate that continues to have limited liquid assets while the Appeal is pending and Barton improperly continues to appeal this Court's sales orders, which hampers the Receiver's ability to generate cash for the receivership estate and diminishes the value of the assets. In short, continuing the Stay, including a Stay in a severed case after permitting briefing on motions to dismiss, is more than justified.

## IV.
## CONCLUSION

For the reasons stated above, the Receiver requests that the Court deny the requested lifting of the stay. Alternatively, the Receiver requests that the Court sever Victoria, Maximilien, and Martine into a separate lawsuit and continue the Stay currently in place in this lawsuit. The Receiver also requests that the Court allow the severed case to proceed only with regard to the motions to dismiss discussed in the Motion.

---

[6] None of the Barton Relatives provide any admissible evidence of "substantial injury" arising from the Stay. Victoria's contention that the pendency of this lawsuit has interfered with the "White House Personnel Vetting Process" is based, apparently, on her inadmissible "belief." Dkt. 12-1, ¶ 17.

Respectfully submitted,

By: */s/ Charlene C. Koonce*
Charlene C. Koonce
State Bar No. 11672850
charlene@brownfoxlaw.com
C. Alan Carrillo
State Bar No. 24109693
alan@brownfoxlaw.com
Timothy B. Wells
Texas Bar No. 24131941
tim@brownfoxlaw.com
BROWN FOX PLLC
8111 Preston Road, Suite 300
Dallas, Texas 75225
T: (214) 327-5000
F: (214) 327-5001

*Attorneys for Receiver Cortney C. Thomas*

**CERTIFICATE OF SERVICE**

Pursuant to Fed. R. Civ. P. 5(d)(1)(B), as amended, no certificate of service is necessary, because this document is being filed with the Court's electronic-filing system.

*/s/ Charlene C. Koonce*
Charlene C. Koonce