**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS - DALLAS DIVISION**

| | | |
|---|---|---|
| **CORT THOMAS, as the Receiver for Carnegie Development, LLC, et al.,** | § | |
| **Plaintiff,** | § | |
| | § | **CAUSE NO. 3:24-cv-00612-X** |
| **v.** | § | |
| | § | |
| **HAOQIANG FU (a/k/a Michael Fu), et al.,** | § | |
| **Defendants.** | § | |

**BARTON RELATIVE DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO LIFT STAY OR SEVER**

TO THE HONORABLE JUDGE OF THIS COURT:

Defendants Victoria L. Barton, Maximilien E. Barton, and Martine G. Barton come before this Court to file their Reply in Support of their Motion to Lift the Stay or Sever, seeking that this Court lift the stay or at least sever the action so that the parties may litigate the allegations against them. In support of that Motion, they would show the Court the following:

## I. REPLY IN SUPPORT OF MOTION TO LIFT STAY

1. In his response, the Receiver asserts that he filed this suit because "evidence demonstrated their receipt of fraudulent transfers." Then he admits that in support for his allegations, he offers support only "at a high level" and commits to a more detailed response only upon filing of motions to dismiss. (Doc. 15, p. 4). However, the Receiver did not sue every entity and person which received funds from the entities, which appears to betray his actual motivations.

2. Setting motivations aside, even if the Court agreed with the initial stay, the Receiver offers no good reason why he cannot take a few minutes and resolve this matter, which would be the most efficient use of his time with regard to this dispute. To keep the Relative Defendants captive in this lawsuit *indefinitely* is not just. And at no point does he begin to demonstrate the probable cause necessary to maintain the stay, when simple conversations would resolve these claims.

**A. Victoria Barton did not receive fraudulent transfers.**

3. There is no competent factual basis for maintaining the stay of litigation based on the alleged fraudulent transfers to Victoria. The Receiver alleges that payments from JMJ Development were made directly to Victoria rather than through V Strategies, LLC. The Receiver's evaluation of the situation conveniently ignores Victoria's reasonable explanation: she was doing work for which she was compensated. While the Receiver might attempt to excuse his behavior by questioning why the checks were addressed to Victoria and not V Strategies, direct payments to Victoria for her work in connection to her own pass-through entity is hardly the material from which fraud should be assumed.

4. As Victoria has testified under penalty of perjury, the payments to her, other than the two November 2018 payments, were consulting fees. She provided supporting documentation in her declaration which the Receiver left unaddressed, and can provide further evidence in support of consulting arrangements should this Court lift the stay, which will include evidence that Victoria worked for JMJ for a time and then ceased such work. When this case is reopened, Victoria will be able to tell the Court of her work with JMJ in full, instead of allowing the Receiver to create a one-sided narrative, and explain any questions. The Receiver's response attempts to obfuscate the sequence of events and the willful decision to include Victoria in the suit without demanding the alleged fraudulent transferred funds returned, or bothering to call her and discuss the matter.

5. Next, the Receiver complains about payments made towards a Porsche loan for Victoria's benefit, which she disclosed, and the Receiver did not "discover." Again, the Receiver's statement ignores Victoria's explanation under penalty of perjury: these payments were a form of compensation for Victoria's consulting services. If the Receiver wanted to question these transactions, the matter could be resolved by a discussion, and Victoria could agree not to sell the vehicle while this matter is worked out. A full lawsuit is not required when a conversation would

work, and the Receiver's limitations argument is easier resolved with a stipulation as to the potential defense of limitations than to file a hurried lawsuit and then seek to abate it immediately.

6. A casual review of the evidence that the Receiver has in his possession would correct his understanding regarding the Porsche's title, which is not in Victoria's name, but titled to JMJ. The Receiver boldly states this allegation in his response, in error, though he asked Victoria to continue making payments and maintaining insurance on the vehicle.

7. The Receiver's assertion that Victoria stated she "did not work for any of the Receivership Entities" during an alleged interview on the first day of the Receivership is demonstrably incorrect. No such interview ever took place. Victoria was not questioned regarding her prior work, and she did not provide any formal or informal statement about her employment history with JMJ or any other entity. What did occur was a brief and informal interaction during which Victoria—concerned that her personal or unrelated work materials might be taken—clarified that she did not *currently* work for JMJ and was simply using the office space that day when visiting her father and brother.

8. Victoria declares under penalty of perjury that she did consultation work for receivership entities for which she was compensated. No evidence before this Court contradicts her.

9. Finally, the Receiver argues that Timothy Barton's non-cooperation with the Receiver and the Receiver's inability to find W-2 and 1099 forms means that Victoria fraudulently received funds. The Receiver's inability to investigate the records of the estate is no reason to leave a consequential federal lawsuit stayed *indefinitely*.

10. Victoria has provided sworn testimony and documentation supporting that all funds she received were for legitimate consulting services, and has even accounted for substantial unpaid compensation still owed to her. The Receiver, by contrast, has presented no competent evidence

of fraud — only speculation, incomplete records, and unsupported conclusions. Maintaining a stay on this basis unfairly burdens an individual who has done nothing wrong and has cooperated fully. For these reasons, the Court should lift the stay as to Victoria and allow her the opportunity to clear her name through a motion to dismiss.

**B. Maximilien Barton did not receive fraudulent transfers.**

11. Maximilien "Max" Barton did not receive fraudulent transfers. The Receiver argues that he could only identify one of the payments to Max as genuine because it came from the payroll of HR Sterling, a Receivership Entity. He uses this as evidence that all other payments to Max were fraudulent. This logic is flawed in light of Max's reasonable explanation under penalty of perjury.

12. Specifically, Max stated that the payments the Receiver identified were a combination of payments for services rendered and reimbursements for expenses that he incurred and for which he was reimbursed.

13. Further, Max demonstrated the good faith of the transfers. He demonstrated that his pay was on the lower end of average for a person with his job description while working for the Receivership Entities. ECF 12-3 at 2, ¶ 12. He described how much and what sorts of work he performed. ECF 12-3 at 2, ¶ 8. He has also testified that because of his experience and the quality of his work, he is now working for a better salary at a competitor to the businesses he previously worked for. ECF 12-3 at 3. These support the claim that Max did not receive fraudulent payments.

14. Finally, the Receiver argues that if Max was employed as a property manager, he must have known that the businesses were engaging in shady practices. Irrespective of whether shady practices were occurring, the Receiver's argument assumes wrongdoing, which has yet to be proven, *or even investigated*.

15. The closest that the Receiver has come to seeing Max's performance was in their first meeting, where Max walked the Receiver through the steps of paying bills at Goldmark and

directed him to Max's notes on how to handle each utility.

16. Regardless of this Court's opinion of Timothy Barton's behavior during litigation, the Receiver has failed to prove at any point that anyone in Timothy Barton's family knew anything about the allegedly fraudulent practices. It begs credulity to assert that a property manager should obviously be complicit in the collection of funds to finance purchase of properties.

17. As Max specified in his declaration, as a property manager, he was concerned with maintaining the properties and dealing with emergencies. He routinely paid for expenses himself and was reimbursed for those expenses. Along with the transactional summary he provided, these support the idea that Max had an intimate knowledge of the day-to-day managerial functions of the real property, i.e., running a hotel staff. They do not support the idea that Max had any intimate knowledge of any allegedly fraudulent financial behavior among the various entities Timothy Barton previously controlled. Therefore, the evidence shows that Maximilien Barton did not receive fraudulent transfers. And while a zealous advocate might litigate with a throw-it-all-and-see-what-sticks approach during a hot lawsuit between two commercial parties, this kind of behavior and reasoning is surely below the expectations of an agent of this Court.

**C. Martine Barton did not receive fraudulent transfers.**

18. By far, the least likely person to receive any fraudulent transfers, to the extent any were allegedly made to members of Timothy Barton's family, is Timothy Barton's ex-wife, Martine Barton. The Receiver admits that he was likely mistaken in adding Martine into the suit as further investigation revealed that charges allegedly for her benefit were actually for the benefit of Goldmark Hospitalities, which controlled Amerigold Suites.

19. The Receiver states that if Martine produces a declaration that she did not receive the alleged fraudulent transfers or the benefit thereof, he would consider dismissing the claims. ECF 15 at 6. The Receiver's response shows that he did not take the time to read the Motion, as Martine

has already filed such a declaration, where she explicitly states under penalty of perjury that she did not receive the alleged $780,000 transfer or receive any benefit therefrom. ECF 12-2.

20. As even the Receiver admits at this point, there is no reason to keep Martine in the suit, and the stay should be lifted so that she can be dismissed.

## II. ALTERNATIVE MOTION TO REOPEN AND SEVER

21. As an alternative, the Receiver indicated that he is not opposed to severing out the claims against the Relative Defendants but wants a stay for briefing on dismissal of the claims.

22. After identifying the relevant test for whether a stay is warranted, the Receiver first argues that the Relative Defendants do not suffer any real harm because of pending litigation.

23. The cases that the Receiver cited in his Response were those that outlined the relative tests. The Relative Defendants do not have any qualms with the tests as described. Where the parties diverge is on the application of the tests. The Receiver applies the test to allege that a stay remains necessary. The Relative Defendants argue that the factors weigh in favor of removing the stay.

24. While the Receiver may view pending litigation as a routine matter, the Receiver's tone-deaf approach to the impact of ongoing civil litigation on parties to the litigation speaks to his lack of understanding. This suit alleges fraudulent transfers, a serious matter that deeply impacts the real people subject to suit. Any of the Relative Defendants who want to find different employment will almost certainly undergo a background check. It is standard to ask applicants whether or not they have been sued and then to ask for an explanation of the suit. The Receiver has permanently tarred the Relative Defendants as the subjects of a fraud suit, which is a serious mark on any professional record. While the claims against them remain pending, they may not even have the benefit of being able to say that the claims were dismissed.

25. As Max noted in his declaration, this pending suit made it incredibly difficult to find employment because of its implications and the negative press around the SEC suit. The Receiver's

claims against the Relative Defendants have caused them great emotional pain and financial stress not only because they had to retain legal counsel but also because of the afore-described difficulty in finding employment. Therefore, the Receiver cannot seriously argue that the stay does not substantially affect the Relative Defendants.

26. Further, the Receiver argues that the receivership estate will drastically suffer if the stay is removed because of the time and resources required to litigate the multiple related actions. An argument against the cost of litigating claims against Timothy Barton is no reason to punish his relatives by association. As described above, the Receiver has failed to present any legitimate basis for believing that the Relative Defendants received fraudulent transfers. Removing the stay and allowing them to seek dismissal of the claims against them will benefit the Receiver and will affect the Receivership, but it is what is required to effect justice.

27. The Receiver's argument is essentially one against the presumption of innocence that is supposed to set this country's sense of justice apart from third-world countries. Of course, it is always easier for law enforcement to assume everyone is guilty, and let God (or this Court) sort it out, forcing the accused to hire attorneys capable of forcing the Receiver to prove his case in front of the Court which appointed him, but our system is not supposed to operate in that way. Yes, it is a hassle for police officers to obtain warrants, but we long ago decided that such processes were important. The Receiver's cavalier approach of, "Well, it's a lot of work to do it right," is not one that this Court should bless, particularly when the accused are two young professionals getting their start and a mother who is completely removed from the events of the dispute.

28. If this Court is not inclined to remove the stay on the entire case, it is a reasonable alternative to sever the Relative Defendants into another action and allow them to seek dismissal of the claims against them. The remaining defendants in this action can remain under a stay.

## III. PRAYER

CONSIDERING the arguments, facts, and authorities, Defendants Victoria L. Barton, Maximilien E. Barton, and Martine G. Barton respectfully request that this Court lift the stay as to the claims against them. Alternatively, the Barton Relative Defendants seek to have the claims against them severed into a separate case. The Relative Defendants further request that this Court grant all such other and further relief to which they may be justly entitled.

Respectfully submitted on April 10, 2025,

*/s/Warren V. Norred*
Warren V. Norred, TBN: 24045094, warren@norredlaw.com
NORRED LAW, PLLC; 515 E. Border Street; Arlington, TX 76010
(817) 704-3984 (Telephone); (817) 524-6686 (Fax)
*Attorney for Barton Relative Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on April 10, 2025, I filed the foregoing motion with the Court using the designated CM/ECF service, which serves a copy of this document and its attachments on all parties of record in this action.

*/s/Warren V. Norred*
Warren V. Norred